**FILED**

JAN 1 6 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>Plaintiff, )<br><br>v. )<br><br>Eduardo RUIZ-Diaz (1) )<br><br>Rosalio ZITLALPOPOCATL-Aguila (2) )<br><br>Francisco REYES-Rosales (3) )<br><br>     Defendants | Mag. Case No. **'08 MJ 8024**<br>COMPLAINT FOR VIOLATION OF:<br><br>Title 8, U.S.C., Section 1324(a)(1)(A)(ii)<br>Illegal Transportation of Aliens |

The undersigned complainant, being duly sworn, states:

On or about January 14, 2008, within the Southern District of California, defendants Eduardo RUIZ-Diaz, Rosalio ZITLALPOPOCATL-Aguila and Francisco REYES-Rosales, with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens, Jesus DURAN-Duran, Rigoberto RODRIGUEZ-Cruz and Ruben RODRIGUEZ-Rodriguez had come to, entered or remained in the United States in violation of law, did transport or move, said aliens within the United States in furtherance of such violation of law; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii).

And the complainant states that this complaint is based on the attached statement of facts which, is incorporated herein by reference.

                                    MICHAEL MIKUSKI
                                    Senior Border Patrol Agent

SWORN TO BEFORE AND SUBSCRIBED IN MY PRESENCE THIS 16th DAY OF JANUARY 2008.

                                    PETER C. LEWIS
                                    United States Magistrate Judge

UNITED STATES OF AMERICA
                    v.
Eduardo RUIZ-Diaz (1)
Rosalio ZITLALPOPOCATL-Aguila (2)
Francisco REYES-Rosales (3)

                    STATEMENT OF FACTS

        The complainant states that this complaint is based upon statements in the investigative

reports by the apprehending U.S. Border Patrol Agent M. Harrington that on January 14, 2008,

the defendants, were apprehended near Calexico, California, along with (16) sixteen other

undocumented aliens from Mexico, in violation of law.

        Agent M. Hernandez was operating the Calexico California Border Patrol Station's

Remote Video Surveillance System (RVSS) and observed a group of individuals make an illegal

entry into the United States by crossing the International Boundary approximately four miles east

of the Calexico East Port Of Entry. Agent Hernandez notified agents in the area of the illegal

entrants and their direction travel.

        Agents J. Vega-Torres and A. Mills were able to locate and observe the illegal entrants as

they made their way north from the border area. Agent Vega-Torres was able to observe an

individual, later identified as Rosalio ZITLALPOPOCATL-Aguila, guiding a portion of the

group.  Agent Vega-Torres also observed ZITLALPOPOCATL was wearing a sweatshirt with

the number sixty-nine on it and was talking on a cell phone several times. Agent Vega-Torres

was able to hear and observed  ZITLALPOPOCATL  giving the members of the group orders to

hurry up, to lay down and to hide when vehicles approached their position.  Agent Mills was able

to maintain observation of the other portion of the group as they traveled to the location.  Agent

Hernandez informed the agents he observed another group of ten suspected illegal entrants approaching their location from the south.

Agent Harrington observed a dark colored Astro Van traveling towards the location of the groups. The van stopped near the location of the illegal entrants. Agents Vega-Torres and Mills saw the group run to and enter the van. The van continued eastbound to the other group of suspected illegal entrants. The agents could see the group of suspected illegal entrants running toward the van. Agent Carter observed one individual, later identified as Francisco REYES-Rosales, yelling in the Spanish language telling the group to hurry up and run. Shortly the van left. Agent Carter observed REYES running for the van and yelling for it to wait for them.

After the van left, Agent Carter approached REYES and the group of suspected illegal entrants. Agent Carter could see REYES talking on a cell phone as he approached. Upon seeing Agent Carter approaching him, REYES dropped the cell phone. Agent Carter questioned REYES and the group. It was determined REYES and rest of the group are natives and citizens of Mexico, illegally in the United States.

Agents Mills and S. Sedano followed the van as it drove away. Using the emergency lights and siren on his Border Patrol Vehicle, Agent Mills attempted to stop the van. The driver of the van, later identified as Eduardo RUIZ-Diaz, failed to yield to Agent Mills. A controlled tire deflation device was successfully deployed against the van. As the van was stopping, Agent Mills was able to pull along side the van could clearly see RUIZ seated behind the steering wheel of the van.

Agents made contact with the occupants of the van and after questioning them it was determined that RUIZ is an alien Lawfully Admitted for Permanent Residence.

ZITLALPOPOTL and the other nine occupants were determined to be natives and citizens of Mexico illegally in the United States. RUIZ, ZITLALPOPOTL and the others were arrested.

Agent Sedano read ZITLALPOPOCATL his rights per Miranda. ZITLALPOPOCATL stated he understood his rights and was willing to answer questions without the presence of an attorney. ZITLALPOPOCATL stated he made arrangements with a smuggler in Mexico to illegally enter the United States for a fee of $1,800. ZITLALPOPOCATL stated after crossing the group ran and split into two groups. ZITLALPOPOCATL stated the guide took four illegal entrants and he took three since he has entered the United States in this area before and knew the route. ZITLALPOPOCATL stated RUIZ, the driver of the van was a man and told them to get in and make themselves comfortable because they were going to pick up more people. ZITLALPOPOCATL stated after they stopped and picked up seven or eight more people they continued driving. ZITLALPOPOCATL stated someone said they were being chased. ZITLALPOPOCATL stated RUIZ told them they were going to stop and everyone was to run.

ZITLALPOPOCATL was shown photo line-up number one and positively identified photo number one, RUIZ, as the driver of the van.

Agent Sedano read REYES his rights per Miranda. REYES stated he understood his rights and was willing to answer questions without the presence of an attorney. REYES stated he made arrangements with a smuggler in Mexico to illegally enter the United States for a fee of $2,200. REYES stated the smuggler agreed to discount the fee by $300 if REYES would guide the group, which REYES agreed to do. REYES stated once at the canal the smugglers indicated to him which way he needed to lead the group upon crossing the canal. REYES stated the smugglers gave him a phone so he could communicate with them. REYES stated he told the group when to run and when to hide. REYES stated they followed him as he continued north

from the border. REYES stated he saw a vehicle stop and pick up another group and he and his group ran toward the vehicle. REYES stated the vehicle passed them by. REYES stated he got on the radio and told the smugglers they missed their ride.

Material Witnesses Jesus DURAN-Duran, Rigoberto RODRIGUEZ-Cruz and Ruben RODRIGUEZ-Rodriguez all stated they are citizens of Mexico illegally in the United States. DURAN, RODRIGUEZ-Cruz and RODRIGUEZ-Rodriguez all stated they made arrangements with a smuggler in Mexico to pay $2,000 to $3,000 to illegally enter the United States.

DURAN stated the smuggler was always in front of the group telling them what to do. DURAN stated after missing the pick up vehicle, the guide was on the radio and told the group not to worry.

RODRIGUEZ-Cruz stated the smuggler who was guiding them told them when to run, duck and hide. RODRIGUEZ-Cruz stated the smuggler was talking on the cell phone and telling another smuggler they were on their way. RODRIGUEZ-Cruz stated the smuggler was also talking by radio to the smuggler who was guiding the other group and the they were suppose to meet up at the pick up spot. RODRIGUEZ-Cruz stated when the vehicle stopped their guide told them to get in.

RODRIGUEZ-Rodriguez stated they followed the smuggler across the fields to where they waited for the van. RODRIGUEZ-Rodriguez stated once the van arrived the smuggler told them to hurry up and get in. RODRIGUEZ-Rodriguez stated after hearing and seeing the lights and sirens, the tires popped. RODRIGUEZ-Rodriguez stated the driver told them all to run.

RODRIGUEZ-Cruz and RODRIGUEZ-Rodriguez both positively identified from photo line-up number one, photo number one, RUIZ, as the driver of the van.

DURAN positively identified from photo line up number two, photo number two, REYES, as the smuggler who guided the group.

RODRIGUEZ-Cruz and RODRIGUEZ-Rodriguez both positively identified from photo line-up number three, photo number three, ZITLALPOPOCATL, as the smuggler who guided him into the United States.

The complainant states that the names of the Material Witnesses are as follows:

| NAME | PLACE OF BIRTH |
|---|---|
| Jesus DURAN-Duran | Mexico |
| Rigoberto RODRIGUEZ-Cruz | Mexico |
| Ruben RODRIGUEZ-Rodriguez | Mexico |

Further, complainant states that Jesus DURAN-Duran, Rigoberto RODRIGUEZ-Cruz and Ruben RODRIGUEZ-Rodriguez are citizens of a country other than the United States; that said aliens have admitted that they are deportable; that their testimony is material, that it is impracticable to secure their attendance at the trial by subpoena; and they are material witnesses in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144.